JOHNSON, Respondent, v. CHICAGO & N. W. RY. CO.,
et al, Appellants

(7 N. W.2d 145.)

(File No. 8485. Opinion filed December 17, 1942.)

**Churchill & Churchill,** of Huron, for Appellants.

**B. H. Schaphorst,** of Brookings, for Respondent.

ROBERTS, J.   Plaintiff was injured while in the em-
ploy of defendant railroad company, a carrier engaged in
both intrastate and interstate commerce.   Proceedings were
commenced before the industrial commissioner to recover
compensation for the injury under the provisions of the
Workmen's Compensation Law.   The railroad company be-
fore the industrial commissioner and on appeal to the circuit
court contended that plaintiff at the time of his injury was
engaged in interstate commerce and that his right of re-
covery was governed by the Federal Employers' Liability
Act and not by the Workmen's Compensation Law of this
state.

At Sioux Valley Junction, three and one-half miles west

of Brookings, South Dakota, the railroad company maintains for servicing locomotives engaged in both intrastate and interstate commerce a coal shed, water tank and pump house. Plaintiff had been employed at this junction for about 6 months, and his principal work was to shovel coal from railroad cars into coal chutes. He also oiled switches, kept the track clear of cinders and kept a record of the amount of coal taken by each locomotive. When the east-bound passenger train running from Pierre, South Dakota, to Chicago, Illinois, arrived at about midnight on August 7, 1937, plaintiff as a part of his duties pulled down an apron or chute over which coal was emptied from one of the bins into the tender of the engine. After the departure of the train, plaintiff entered the pump house where he filed a slip indicating the number of tons of coal taken by the locomotive. The industrial commissioner found that plaintiff after leaving the pump house "noticed, through the dark of the night, men in a car of the employer's coal, which car was located on the coal storage track, and it appeared that the men were attempting to steal coal of his employer; and claimant shouted at them and took a step, when he was struck and knocked unconscious." The industrial commissioner concluded that the personal injury was caused by an accident arising out of and in the course of the employment of plaintiff by defendant railroad company and that plaintiff at the time of his injury was not engaged in interstate transportation or in work so closely related to it as to be practically a part of it.

█ █ If upon the facts disclosed by the record the case is one arising under and governed by the Federal Employers' Liability Act, the compensation law of this state did not apply. The federal act provides that every common carrier by railroad, while engaged in commerce between the states, territories or foreign countries shall be liable to damages "to any person suffering injury while he is employed by such carrier in such commerce." 45 U.S.C.A. § 51. The amendment of this section by Act of Congress of August 11, 1939, c. 685, § 1, 53 Stat. 1404, 45 U.S.C.A. § 51, defining the

scope of the federal liability act, was enacted subsequent to the time of plaintiff's injury and has no application to the present proceeding. The United States Supreme Court has in numerous decisions considered the question as to what employees are engaged in interstate commerce or transportation within the terms of the act prior to its amendment. The character of employment whether intrastate or interstate depended on the particular service in which an employee was engaged at the time of his injury. The court in New York, N. H. & H. R. Co. v. Bezue, 284 U. S. 415, 52 S. Ct. 205, 206, 76 L. Ed. 370, 77 A. L. R. 1370, said:

"The state court held that the terminal facilities in which respondent worked constitute a part of the railroad's system necessary to the operation of the road and to the conduct of interstate commerce; that the fact that some work is there done on locomotives engaged in intrastate commerce does not deprive the establishment of its character as an essential instrumentality of interstate commerce; that the respondent was engaged in a 'plant service,' and worked indiscriminately upon engines engaged in interstate and intrastate commerce. The conclusion was that the nature and purpose of the plant warranted characterization of all respondent's work, of whatever nature, as in interstate commerce.

"The test thus applied is broader than our decisions justify. All work performed in railroad employment may, in a sense, be said to be necessary to the operation of the road. The business could not be conducted without repair shop employees, clerks, janitors, mechanics, and those who operate all manner of appliances not directly or intimately concerned with interstate transportation as such, or with facilities actually used therein. But we have held that the mere fact of empolyment does not bring such employees within the act."

The fundamental test for determining whether an employee was engaged in interstate transportation is stated as follows in Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 36 S. Ct. 188, 189, 60 L. Ed. 436, L. R. A. 1916C, 797:

"Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" Plaintiff in that case was injured while engaged in taking down and putting into a new location in a machine shop an overhead counter shaft through which power was communicated to machinery used in repair work. The court applying the test for determining the character of the employment to the facts of the case concluded as follows:

"Coming to apply the test to the case in hand, it is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car, or other instrument then in use in such transportation. What he was doing was altering the location of a fixture in a machine shop. The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation. This, we think, demonstrates that the work in which Shanks was engaged, like that of the coal miner in the Yurkonis case, was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed in interstate commerce within the meaning of the employers' liability act."

In Delaware, L. & W. R. Co. v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397, referred to in the Shanks case, plaintiff was employed as a miner and was injured while at work in the mine. The court held that he was not engaged in interstate transportation merely because the coal might be or was intended to be used in the conduct of interstate commerce after the same was mined.

In Chicago, B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 518, 60 L. Ed. 941, the employee, at the time he received the injuries resulting in his death, was a member of a switching crew engaged in switching coal belonging to the defendant railroad company from the storage track to a coal shed where it was to be placed in bins for use of

locomotives engaged in both intrastate and interstate traffic. After referring to the test laid down in the Shanks case, the court said: "Manifestly, there was no such close or direct relation to interstate transportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use."

In Erie Railroad Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790, the injured employee was operating a gasoline engine to pump water into a tank for the use of locomotives engaged both in intrastate and interstate traffic. In Erie Railroad Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794, it was the duty of the injured employee to dry sand for the use of locomotives engaged in both intrastate and interstate traffic. Injury to the employee occurred when he was carrying ashes from the sand house to a nearby ash pit. These cases were subsequently overruled in Chicago & E. Illinois R. Co. v. Industrial Comm. et al., 284 U. S. 296, 52 S. Ct. 151, 76 L. Ed. 304, 77 A. L. R. 1367, wherein the court held that coal being hoisted into a chute to be used principally for locomotives hauling interstate freight did not bring within the federal act an employee engaged in such work. The court said:

"The only difference between those cases and this one is that here the work of the employee related to coal, while in the Collins case it related to water, and in the Szary case, to sand. Obviously the difference is not one of substance, and, if the Collins and Szary cases are followed, a reversal of the judgment below would result. * * *

"We are unable to reconcile this decision with the rule deducible from the Collins and Szary cases, and it becomes our duty to determine which is authoritative. From a reading of the opinion in the Collins case, it is apparent that the test of the Shanks case was not followed, * * * the words 'interstate commerce' being inadvertently substituted for the words 'interstate transportation.' The Szary case is subject to the same criticism, since it simply followed the Collins case. Both cases are out of harmony with the general cur-

rent of the decisions of this court since the Shanks case, * * * and they are now definitely overruled."

It may be conceded that plaintiff was employed in interstate commerce within the meaning of the federal act when he emptied the coal into the tender of the locomotive. But the applicable test was the nature of the work being done at the time of injury. Viewing the facts in the light of the federal decisions which are here controlling, we think that the trial court correctly concluded that plaintiff at the time of his injury was "not engaged in interstate transportation or in work so closely related to it as to be practically a part of it."

It is argued that plaintiff not having been employed as a watchman or guard departed temporarily from his usual vocation and that his injury was not caused by an accident arising out of and in the course of employment. An employee does not go outside of the course of his employment, if, when confronted with a sudden emergency, he steps beyond his ordinary duties to protect his employer's property. 71 C. J. 667; Sebo v. Libby, McNeil & Libby et al., 216 Mich. 351, 185 N. W. 702; Sweeny v. Sweeny Tire Stores Co., et al., 227 Mo. App. 93, 49 S. W.2d 205; A. L. Randall Co. v. Industrial Comm., et al., 305 Ill. 558, 137 N. E. 435. The facts here are clearly distinguishable from those in Wilson v. Dakota Light & Power Co., 45 S. D. 175, 186 N. W. 828, and Ross v. Independent School Dist. No. 1 of Madison et al., 49 S. D. 491, 207 N. W. 446, and these decisions are not here controlling.

The remaining assignment of error is that the finding as to total temporary disability is not sustained by the evidence. The industrial commissioner found that claimant suffered temporary disability for a period of forty weeks. The employer contends that the nervous condition found by the commissioner to exist and to constitute the basis of such disability was caused by the wilful refusal of plaintiff to have certain abscessed teeth extracted. In Detling v. Tessier et al., 60 S. D. 405, 244 N. W. 538, this court held that an injury aggravated by the wilful or unreasonable conduct

of an employee is not compensable as to the additional period of disability. In considering the sufficiency of the finding, we must look to the evidence most favorable to the plaintiff as the prevailing party. The testimony of Dr. M. C. Tank who examined the plaintiff tends to support the finding of the commissioner. He expressed the opinion that "a small abscess causing all this nervousness would be quite an assumption. It may cause him some joint pains, and some nervousness, but not as nervous as he appears to me." The evidence was conflicting and presented an issue of fact for the commissioner.

It follows that the judgment of the circuit court affirming the award of the industrial commissioner should be affirmed. It is so ordered.

All the Judges concur.