[L.A. No. 30515. In Bank. Feb. 2, 1976.]

STEPHEN O. MARTINEZ, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
ROMAN CATHOLIC BISHOP OF SAN DIEGO et al., Respondents.

COUNSEL

Thompson, Talbott & Lemaster and George D. Thompson for Petitioner.

Chernow & Lieb and Donald C. Lieb for Respondents.

## OPINION

**RICHARDSON, J.**—Petitioner Stephen O. Martinez was beaten and seriously injured while attempting to prevent the theft of his employer's property. The sole question before us is whether petitioner is entitled to recover workers' compensation for the injuries he incurred. We have concluded that emergency efforts by an employee acting in good faith to save his employer's property from loss by theft constitute acts performed within the course of employment, and that accordingly petitioner should be afforded compensation benefits.

Petitioner was a member of the parish council of Our Lady of Guadalupe Roman Catholic Church of Chino. The council was composed of various church members appointed by the parish priest to organize and supervise volunteer, service-type activities. A fiesta was planned by the council for June 17, 1973, to raise funds to buy a new air conditioning unit for the church. The festivities were to be held on church premises and were to include carnival-type games and the sale of food and beer. Among the topics discussed by the council during its planning sessions was the subject of security; evidently some concern existed regarding possible disturbances by intoxicated persons and others who might attempt to disrupt the fiesta. To avoid the expense of hiring security guards, the council voted to assume the task itself by policing its own party.

Petitioner's specific duty was to assist in the operation of the beer booth. He worked there from noon until 4:30 p.m. when he left to have dinner with his wife and children. After his dinner, petitioner strolled around the fiesta with his family. Although there were enough volunteers to operate the beer booth, petitioner nevertheless regularly checked the booth to see if his help was needed. During his walks, he received several reports that teenagers were pilfering beer from the stock used to resupply the booth. Petitioner's initial efforts to locate the offenders were

unsuccessful, but at 8 p.m. he encountered a group of juveniles on the church premises in possession of beer which petitioner believed to be stolen. (Petitioner may have been mistaken, as his employer's beer was chilled and the beer in the juveniles' possession was warm. However, the mere passage of time might have accounted for the apparent difference in temperature.)

Petitioner asked one of the youths to return a six-pack of beer he was then holding. The youth responded with profanity, and petitioner grabbed him and attempted to retrieve the six-pack; a fight ensued and petitioner was hit on the head with a wine bottle and brutally beaten and kicked by his assailants. As petitioner's employer (the Roman Catholic Bishop of San Diego) had obtained a workers' compensation insurance policy covering volunteer workers, petitioner filed a compensation claim. (See Lab. Code, § 3363.6.)

Following a hearing, the workers' compensation judge (formerly referee) found that petitioner was engaged in protecting his employer's property when the incident occurred and that this activity was so closely related to petitioner's employment duties as to justify compensability for petitioner's injuries. On petition for reconsideration, the Workers' Compensation Appeals Board declined to adopt the judge's recommendation, holding that petitioner's injuries were not incurred within the course of his employment. In particular, the board found (1) that petitioner's beer booth duties terminated at 4:30 p.m., and (2) that petitioner had no duty to investigate theft, as he was not hired as a security guard.

It is well established that the factual determinations of the board must be upheld if its findings are supported by substantial evidence in the light of the entire record. (Lab. Code, § 5952, subd. (d); *LeVesque* v. *Workmen's Comp. App. Bd.*, 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) In the present case, it is questionable whether the board's findings are founded upon substantial evidence. Certainly, petitioner, as a volunteer worker, considered himself "on call" at the beer booth whenever his services were needed, for he regularly returned to the booth to ascertain whether enough volunteer help existed. Moreover, although he was not formally hired as a security guard, he was a member of the church council which had voted to "self-police" the affair. Thus, it is arguable that petitioner was engaged in both "beer booth" and "security" activities at the time he was injured.

██ We need not rest our decision upon such narrow grounds, however, for even if petitioner had completed his employment duties at the time of the incident in question, he should be permitted to recover compensation under the present circumstances. As a recognized authority in the compensation area has explained, "[i]t is too obvious for discussion that emergency efforts to save the employer's property from fire, theft, . . . or other hazards are within the course of employment. *The fact that the rescue effort takes place outside of working hours does not detract from its work-connected status.*" (1 Larson, Workmen's Compensation Law (1972) § 28.11, pp. 5-269, 5-270, italics added and fns. omitted; see also, 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1975) § 9.01[2], p. 9-7.) Years ago, in an analogous situation, we held compensable a stable hand's injuries sustained during his attempt to rescue a child endangered by a horse on the employer's premises. (*Ocean A. & G. Corp.* v. *Industrial Acc. Com.* (1919) 180 Cal. 389 [182 P. 35].) As we stated, "To be sure, he was not employed to rescue children. But certainly it was reasonably within the course of his employment, within the scope of those things which might reasonably be expected of him as an employee, that he should attempt to prevent an accident on his employer's premises . . . . If, in this case, Nelson, instead of being injured in an attempt to prevent a child being run over on his employer's premises by an officer of his employer there on his company's business, had been injured in an attempt to put out an incipient fire accidently started in the barn, it is hardly possible that any question would have been made. Yet there is no real distinction between the two cases. Nelson was no more employed to put out fires than he was to rescue children. The point is that the danger which threatened, and in attempting to remove which he was hurt, was one which threatened his employer and directly concerned it, and with which Nelson was confronted in the discharge of his customary duties." (Pp. 392-393.)

Similarly, in the present case, although petitioner may not have been employed to prevent theft of his employer's property, it was reasonably within the course of his employment that he might attempt to do so. As stated in a recent case, "Whether a particular activity be classified by the term's [*sic*] response to an emergency, rescue, personal comfort or convenience, recreation, exercise, courtesy, or common decency, the point is that the activity was reasonably to be contemplated because of its general nature as a normal human response in a particular situation or in some cases because of its being recognized as an acceptable practice in the particular place by custom. Human services cannot be employed

without taking the whole package." (*North American Rockwell Corp.* v. *Workmen's Comp. App. Bd.* (1970) 9 Cal.App.3d 154, 159 [87 Cal.Rptr. 774] [injury sustained in employer-furnished parking area while assisting fellow employee].)

Similarly, in *Johnson* v. *Chicago & N. W. Ry. Co.* (1942) 69 S.D. 111 [7 N.W.2d 145], the court held compensable an injury sustained by a railroad employee who was injured when he attempted to stop his assailants from stealing his employer's coal. Despite the fact that the workman was hired to shovel coal rather than act as a watchman or guard, the court held that an employee does not leave the course of his employment when he acts to protect his employer's property from theft. The *Johnson* rationale should apply with equal force to injuries received on the employment premises by an off-duty employee while attempting to prevent such a theft. ■ As we recently observed in *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312 [90 Cal.Rptr. 355, 475 P.2d 451], "Although the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Workmen's Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee. [Citation.] This rule is binding upon the board and this court." (P. 317.)

■ Courts have not been precise in defining the types of situations which constitute an "emergency" for purposes of applying the rule that work-related emergency activities are compensable. (See Larson, *supra,* § 28.13, pp. 5-276, 5-277.) We believe, however, that an "emergency" may be deemed to exist whenever an employee faces an immediate, and apparent, on-the-premises theft of his employer's property. Moreover, according to Larson, "[i]t is a well-established principle, even at common law, that the actor's judgment about the existence of an emergency and how to meet it should not be too severely judged in retrospect. He may get the benefit of the emergency doctrine even if the only emergency was in his imagination, *if he acted in good faith.*" (*Id.,* p. 5-277, fns. omitted, italics added.) ■ It appears uncontradicted that petitioner acted in a good faith attempt to prevent an on-going theft of his employer's property.

Respondents suggest that petitioner herein acted as an "aggressor" in initiating the "altercation" which resulted in his injuries and that,

accordingly, he should be denied compensation on that ground. (See Lab. Code, § 3600, subd. (g) [compensation denied when applicant is the "initial physical aggressor" in an "altercation"].) We do not believe, however, that petitioner's act in grabbing the youth who possessed the six-pack of beer in question constituted an act of aggression within the meaning of section 3600.

We recently had occasion to review the principles underlying the aggressor provision in *Mathews* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719 [100 Cal.Rptr. 301, 493 P.2d 1165]. Initially, we noted that in view of the statutory policy of liberal construction in favor of injured workers, the aggressor provision itself "must be narrowly and strictly construed. [Citation.]" (P. 726.) We next explained that ". . . an 'initial physical aggressor' is one who first engages in physical conduct which a reasonable man would perceive to be a ' "real, present and apparent threat of bodily harm. . . ." ' [Citation.]" (P. 727, fn. omitted.) In the instant case, it is doubtful that petitioner's act of grabbing the youth for purposes of wresting from him the six-pack of beer presented a "real, present and apparent threat of bodily harm." Rather, it should have been apparent to a reasonable man that petitioner intended no harm under the circumstances but acted only to retrieve property which he believed to have been stolen.

Moreover, we also suggested in *Mathews* that the aggressor provision was intended as a deterrent to, or punishment for, acts of "wilful wrongdoing" or "intentional misconduct." (*Id.,* at pp. 728, 734-735.) Petitioner's good faith attempt to prevent a theft of his employer's property should not reasonably be construed as misconduct disqualifying him from compensation benefits. Indeed, if the rule were otherwise, an employee would forfeit his compensation rights whenever he initiated physical means of preventing misconduct by others and an altercation developed causing him injury.

Finally, the record indicates that the board did not find that petitioner was an aggressor, nor did the board purport to deny petitioner compensation benefits on that basis. The board's sole theory was that petitioner was not acting in the course of his employment when he was injured, a theory which was incorrect as a matter of law, by reason of the emergency doctrine discussed above.

The decision of the board is annulled and the cause is remanded to the board for further proceedings consistent with the views herein expressed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

On March 1, 1976, the opinion was modified to read as printed above.