**COMMERCIAL CARRIERS and Old Republic Insurance, Petitioners,**

v.

**The INDUSTRIAL COMMISSION OF UTAH, and Ronny Lyn Judd, Respondents.**

No. 940208–CA.

Court of Appeals of Utah.

Dec. 30, 1994.

Anne Swensen and Julianne P. Blanch, Salt Lake City, for petitioners.

Eugene C. Miller, Jr., Salt Lake City, for respondents.

Before DAVIS, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Petitioners Commercial Carriers (Commercial) and its insurer, Old Republic Insurance, seek reversal of a decision by the Board of Review of the Utah Industrial Commission (the Board) granting worker's compensation benefits to Commercial's employee, Ronny Lyn Judd (Judd), a truck driver who was injured in a fight at a truck stop motel. We affirm.

## BACKGROUND

On May 21, 1992, Commercial assigned Judd and fellow trucker, Jim Coyle (Coyle), to transport a truck load of automobiles from Wentzville, Missouri, to Burlingame, California. The two men stopped for the night at a motel in Fort Kearney, Nebraska. They spent several hours drinking in the motel bar. After the bar closed, Judd and Coyle encountered two men in the parking lot near their trucks. Judd and Coyle told the men to stay away from their trucks, and the two men fled into a field. Judd and Coyle pursued the two men into the field, where Judd was severely beaten by one of the men.

When Commercial refused Judd's request for worker's compensation benefits, Judd petitioned the Utah Industrial Commission for a hearing on his claim. After a hearing, the administrative law judge (ALJ) found that Judd and Coyle met two women who joined them at the bar to escape the "harassment" of two younger men, who had asked the women to dance. The ALJ ultimately found that the fight that caused Judd's injuries resulted from personal animosity between Judd and the two younger men "who were competing for the attention" of the two women. Accordingly, the ALJ dismissed Judd's claim with prejudice.

Judd appealed to the Board. Although the Board adopted most of the ALJ's findings of fact, it drew different "inferences" from those facts. The Board found that Judd and Coyle met the women at the bar and walked them to their car when the bar closed. After the women drove away, the two young men who had been in the bar suggested to Judd and Coyle that the four of them buy more beer and drink it in their motel room. The truckers declined, stating they had to leave early in the morning.

The Board found that, during the conversation, the young men also asked if they could take one of the cars Judd and Coyle were transporting out for a drive. Judd told the young men such use was prohibited and warned them that all of the cars had alarms.

The Board further found that Judd and Coyle then left the young men and walked to the parking lot to check their trucks. Afterward, they walked to a nearby convenience store, but the store was closed. As they were walking back to the motel, they observed the two young men in the parking lot, walking around the parked cars and trucks. Judd and Coyle walked toward their trucks and watched the young men from the shadows.

The young men then approached Judd's and Coyle's trucks, and one said, "[T]hese must be the vehicles with the alarms." At

that point, Judd and Coyle confronted the young men and told them to stay away from their trucks and all other trucks in the parking lot.

The two young men fled into the field, and Judd and Coyle walked after them. About thirty yards into the field, the young men stopped. One of them beat Judd, who suffered serious injuries.

Based on those findings, the Board reversed the ALJ's decision and awarded worker's compensation benefits to Judd. The Board concluded that although the women at the bar joined Judd and Coyle in part to "avoid the attentions of the two younger men," there was "no objective evidence" to support the "hypothesis" that the fight stemmed from antagonism concerning the two women. Thus, the Board concluded that the fight and Judd's injuries "arose out of and in the course of" Judd's employment.

## ISSUES ON APPEAL

Commercial raises two issues on appeal:

(1) Did the Board correctly determine that Judd's injuries arose out of and in the course of his employment under Utah Code Ann. § 35–1–45 (1988)?

(2) Did the Board err in allowing Judd an extension of time to appeal the ALJ's denial of benefits without a showing of good cause?

## STANDARD OF REVIEW

■ ■ We review the Board's findings of fact under section 63–46b–16(4)(g) of the Utah Code, which provides that a factual finding may be disturbed only if it "is not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1989); *King v. Industrial Comm'n,* 850 P.2d

1281, 1285 (Utah App.1993). We review an agency's interpretation and application of statutes for correctness, unless the statute in question grants the agency discretion. *Morton Int'l, Inc. v. Auditing Div. of State Tax Comm'n,* 814 P.2d 581, 588–89 (Utah 1991). Because section 35–1–45 of the Utah Code, which states that compensable injuries must "arise out of and in the course of employment," grants no discretion, we review the Board's decisions for correctness. *Walls v. Industrial Comm'n,* 857 P.2d 964, 966–67 (Utah App.1993) ("[S]ection 35–1–45 (1988) does not expressly or impliedly grant the Commission discretion to interpret or apply the language of that section.").

## ANALYSIS

Commercial makes three main arguments on appeal. First, Commercial argues that the Board's findings are not supported by substantial evidence and, thus, should be reversed. Second, Commercial claims that the Board erred in concluding Judd's injuries were work-related. Finally, Commercial argues that it was substantially prejudiced by the Board's decision to grant Judd an extension of time to appeal the ALJ's order. We consider each of these arguments in turn.

### I. Substantial Evidence

■ ■ Commercial claims the Board's findings of fact are not supported by "substantial evidence," as required by Utah Code Ann. § 63–46b–16(4)(g) (1989).[1] Commercial argues that the Board cannot reverse the ALJ's findings of fact without stating specifically and in detail the reasons for doing so. We disagree.

"While it is the ALJ who initially hears the evidence, the Commission is the ultimate fact finder." *Chase v. Industrial Comm'n,* 872

---

1. In challenging the Board's factual findings, a party is required to marshal all of the evidence in support of the Board's findings, then demonstrate that the findings are not supported by substantial evidence. *Johnson v. Board of Review,* 842 P.2d 910, 912 (Utah App.1992). In the instant case, Commercial's efforts at marshalling the evidence fall short of this requirement. In effect, Commercial selectively presented those findings that support its position and omitted findings that support Judd's position. For exam-

ple, Commercial did not mention that the two young men suggested that Judd and Coyle join them for more beer drinking after the lounge closed. Commercial also failed to state that Judd and Coyle had checked their trucks after leaving the bar. That evidence is important because it tends to support the Board's findings that the fight and Judd's injuries resulted not from personal antipathy, but from Judd's attempt to safeguard his cargo.

P.2d 475, 479 (Utah App.1994) (citing *Virgin v. Board of Review of Indus. Comm'n,* 803 P.2d 1284, 1287 (Utah App.1990)); *see also U.S. Steel Corp. v. Industrial Comm'n,* 607 P.2d 807, 810–11 (Utah 1980) (holding that Industrial Commission is ultimate fact finder). Moreover, Professor Arthur Larson, in his treatise on worker's compensation, notes that the decisions of the Board, not the ALJ, are deemed conclusive in the majority of states.[2] 3 Arthur Larson, *Workmen's Compensation Law* § 80–12(b) (1994).

██ We therefore review the record before us to determine if substantial evidence supports the Board's factual findings. Substantial evidence is more than a " 'scintilla' of evidence," though " 'less than the weight of the evidence.' " *Grace Drilling v. Board of Review,* 776 P.2d 63, 68 (Utah App.1989) (citation omitted), *superseded on other grounds,* 819 P.2d 361 (1991). Substantial evidence is that quantum and quality of relevant evidence that will convince a reasonable mind to support a conclusion. *First Nat'l Bank v. County Bd. of Equalization,* 799 P.2d 1163, 1165 (Utah 1990). To determine whether a finding is supported by substantial evidence, we examine the record as a whole, weighing evidence that both supports and detracts from the finding. *Grace Drilling,* 776 P.2d at 68.

██ Commercial argues that the Board must explain its reasons for making different findings than the ALJ. Commercial claims that this court's decision in *Adams v. Board of Review of the Indus. Comm'n,* 821 P.2d 1 (Utah App.1991), requires the Board to adequately detail the logic behind a factual finding so that it may be challenged on appeal. *Id.* at 5 (the Board's findings " 'should be sufficiently detailed to disclose the steps by which the ultimate factual conclusions, or conclusions of mixed fact and law, are reached.' ") (quoting *Milne Truck Lines, Inc.*

*v. Public Serv. Comm'n,* 720 P.2d 1373, 1378 (Utah 1986)).

However, Commercial's reliance on *Adams* is misplaced. In *Adams,* a worker at a telemarketing firm claimed a variety of injuries stemming from her work, which required constant use of the telephone without a headset or automatic dialing equipment. *Id.* at 3. The ALJ reviewed conflicting medical testimony from doctors and mental health professionals, some of whom thought her injuries were work-related, while others did not. *Id.* at 3–4. The ALJ ultimately denied benefits after summarizing the conflicting testimony. *Id.* at 6. The Industrial Commission affirmed the decision with a single "finding," stating simply that the injury was not work-related. *Id.* at 5. This court vacated the Commission's order, holding that the finding was "arbitrary" because it was so inadequate that it defied meaningful review. *Id.* at 7; *see* Utah Code Ann. § 63–46b–16(4)(h)(iv) (1990). Thus, the question addressed by the *Adams* court was not whether the findings were supported by substantial evidence, but rather whether the findings sufficiently disclosed the logical process employed to permit meaningful review.

By contrast, the findings in the instant case are sufficiently detailed to meet the *Adams* test. The Board's findings consist of thirteen paragraphs carefully detailing the events leading to Judd's injuries.[3] The Board's findings are sufficiently detailed that we can discern the Board's logical process; i.e., subsidiary fact findings logically lead to ultimate fact findings.

██ Moreover, our review of the record indicates there was substantial evidence to support the Board's findings. The Board found that Judd and Coyle spent several hours in the motel lounge, during which time they encountered two women, one of whom was an acquaintance of Judd's. Further, the Board found that, "to some degree," the

2. Only seven states—Florida, Pennsylvania, Oklahoma, Arizona, Michigan, Colorado, and Kentucky—and the Longshoreman's Act attach a presumption of conclusiveness to the ALJ's or referee's findings. 3 Arthur Larson, *Workmen's Compensation Law* § 80.12(c)(1)–(8) (1994).

3. Although it is not incumbent on the Board, as the ultimate fact finder, to explain its reasons for reversing the ALJ, we note that the Board nonetheless states that it simply finds no "objective evidence to support" the "hypothesis that Judd's beating resulted from a fight over women rather than a fight over the truck and cars."

women joined Judd and Coyle to avoid the two younger men. Nonetheless, the Board found that the young men later suggested that Judd and Coyle join them for more beer after the bar closed. The young men also asked if they could drive one of the cars Judd and Coyle were transporting, but Judd told them it was not allowed. After leaving the bar, Judd and Coyle walked to the parking lot to check their trucks. A short time later, Judd and Coyle observed the two young men approach their trucks and overheard one of the young men say, "[T]hese must be the vehicles with the alarms." Judd and Coyle confronted the two men, who fled into the field. The two truckers pursued the young men about thirty yards into the field, and Judd was severely injured.

"It is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences." *Grace Drilling*, 776 P.2d at 68. Thus, the inference that Judd's injuries were job-related is clearly within the Board's fact-finding authority.

## II. Work-related Injuries

■ Having ruled on the adequacy and substantiality of the factual findings, we turn next to the question of whether these facts establish that Judd's injuries "arose out of and in the course of his employment."[4]

■ The Board found Judd's injuries "arose out of" his employment. We agree. Injuries are deemed to arise out of employment when there is a "causal relationship" between the injury and the employment. *M & K Corp. v. Industrial Comm'n*, 112 Utah 488, 189 P.2d 132, 134 (1948). As Professor Larson notes, "arising out of" employment is not synonymous with "caused by" employ-

ment; rather, the cause of the injury "is something other than the employment; the employment is thought of more as a *condition* out of which the event arises than as the force producing the event in affirmative fashion." 1 Larson, *supra*, § 6.60, at 3–9 (emphasis in original). Moreover, "[t]he controlling test should be 'if the circumstances of the employment can be fairly said to have elicited conduct by the employee which results in his injury.'" *Id.* § 11.11(c), at 3–205 (citation omitted). Accordingly, when the injuries result from a fight, the injuries may still be causally related to the employment "[i]f the fight is spontaneous and closely entangled with the work itself." *Id.* § 11.15(a), at 3–243. Because Judd was injured while attempting to protect his cargo, we conclude that the fight was "closely entangled" with his job as a truck driver for Commercial. Thus, we concur with the Board's conclusion that Judd's injury arose out of his employment by Commercial.[5]

■ We also agree with the Board's conclusion that Judd's injuries arose "in the course of" his employment. An accident arises in the course of employment when "it occurs while the employee is rendering service to his employer which he was hired to do or doing something incidental thereto, at the time when and the place where he was authorized to render such service." *M & K Corp.*, 189 P.2d at 134. Additionally, an injury arises in the course of employment if it occurs within the "time, place and circumstances" of the employment. *Walls v. Industrial Comm'n*, 857 P.2d 964, 967 (Utah App. 1993); *see* 1 Larson, *supra*, § 14.00.

■ Commercial argues that Judd's injuries are not compensable because they were suffered during a personal deviation from work. Commercial relies upon *Walls*, in which this court held that a bartender who

---

4. As Professor Larson notes, the "arising out of" and the "in the course of" provisions are usually regarded as separate legal tests, each of which must be met before compensation can be awarded. 1 Larson, *supra*, § 6.10, at 3–3. This would appear to be the case in Utah, which at one time was, according to Larson, the only state in which a worker was awarded compensation for an injury "arising out of *or* in the course of employment." *Id.* at 3–2 (citing Utah Code Ann. § 35–1–45 (1953)) (emphasis added). The statute has

since been amended to state that compensable injuries are those "arising out of *and* in the course of his employment." Utah Code Ann. § 35–1–45 (1988) (emphasis added).

5. Although Commercial vigorously contested the factual findings underlying the Board's conclusion on this point, it does not attack the legal conclusion itself. Thus, we need not consider it further.

was injured while helping move a beer keg several hours after her scheduled shift was not entitled to compensation. *Walls*, 857 P.2d at 966.

However, *Walls* is distinguishable because it involves an employee who was injured following a clear break from her employment responsibilities. Here, Judd, in his capacity as a truck driver for Commercial, had general working hours in that he could drive for ten hours or 540 miles a day. After stopping in Fort Kearney for the evening, Judd and Coyle decided to relax and drink beer for several hours in the motel lounge. Nonetheless, when the bar closed, the two checked their trucks in order to ensure the cargo was safe. When they discovered the two young men milling around the trucks, Judd and Coyle chased them away.[6] Judd's injuries were a direct result of his attempt to protect his cargo, not a personal deviation from work.

Moreover, it is reasonable that an employee should feel some responsibility to protect his or her employer's property. *See Martinez v. Workers' Comp. App. Bd.*, 15 Cal.3d 982, 127 Cal.Rptr. 150, 152, 544 P.2d 1350, 1352 (1976) (church worker who was injured while attempting to prevent theft of beer from his employer is entitled to worker's compensation). In this case, it was reasonable that Judd would attempt to preempt potential vandals rather than simply notifying police after the vandalism had occurred. Judd's concerns about the intentions of the two young men were especially understandable in light of the interest the young men had expressed in taking one of the cars for a "joy ride."

Accordingly, we conclude that the Board did not err in determining Judd's injuries "arose out of and in the course of his employment." Also, Judd was responsible for delivering his cargo safely to its ultimate destination. That job was necessarily punctuated by rest stops, but those stops did not terminate his duty to protect the cargo from harm.

### III. Judd's Motion for Review

Commercial argues that the Board erred in granting Judd a thirty-day extension of time to appeal the ALJ's ruling without requiring Judd to show good cause for the extension. *See* Utah Code Ann. § 63–46b-1(9) (1989) ("Nothing in this chapter may be interpreted to restrict a presiding officer, for good cause shown, from lengthening or shortening any time period prescribed in this chapter"). Moreover, Commercial argues that this court should reverse under Utah Code Ann. § 63–46b-16(4)(h)(iii) (1989), which requires reversal if a party has been substantially prejudiced by an action that is contrary to the agency's prior practice. Commercial cites *Maverik Country Stores v. Industrial Commission*, 860 P.2d 944 (Utah App.1993), as support for this argument.

We find Commercial's argument unpersuasive. First, *Maverik* is distinguishable because the request for an extension was filed after the deadline. *Id.* at 946. Conversely, Judd filed his request for a continuance one day *before* the cut-off. Second, Commercial did not claim in its motion opposing the extension that it would be substantially prejudiced by an extension. Utah Code Ann. § 63–46b-16(4)(h)(iii). Without a showing of substantial prejudice, Commercial's motion was without merit. Moreover, a claim of substantial prejudice would be unavailing to Commercial because the test for substantial prejudice is not, as Commercial claims, the fact that it received an unfavorable result; rather, the test is whether Commercial was given full and fair consideration of the issues. *See Ashton v. Ashton*, 733 P.2d 147, 154 (Utah 1987). There is nothing to indicate the Board failed to fully and fairly consider Commercial's position. Thus, there was no prejudicial error.

### CONCLUSION

We conclude that the Board's factual findings concerning the circumstances of Judd's

---

6. Commercial argues that by confronting the two men and chasing them into the field, Judd violated company rules, which require a trucker to immediately report vandalism to the police. However, this contention was directly contradicted by testimony of Commercial's terminal manager, who told the ALJ that "I don't believe that we have ever instructed" truckers what to do when someone is only *attempting* to vandalize their trucks.

injuries were supported by substantial evidence. Although some of the Board's findings were at odds with those of the ALJ, the Board is the ultimate fact finder, and it was within its authority in adopting different findings. Further, we find the Board was correct in concluding that Judd's injuries "arose out of and in the course of" his employment for Commercial. His injuries were, as the Board ruled, "closely entangled" with his work responsibilities. We also find it reasonable that Judd acted to protect his employer's property. Finally, we conclude that Commercial's claim that the Board committed prejudicial error by granting a thirty-day extension to Judd for challenging the ALJ's ruling is without merit.

Accordingly, we affirm.

DAVIS and JACKSON, JJ., concur.