1996 SD 115

**Taryl J. ROHLCK, Claimant and Appellant,**

v.

**J & L RAINBOW, INC., d/b/a Rainbow Bar and Lime Lite Casino, Employer and Appellee,**

and

**National Surety Corporation, Insurer and Appellee.**

No. 19438.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1996.

Decided Sept. 4, 1996.

---

Thomas W. Parliman, Sioux Falls, for claimant and appellant.

Comet H. Haraldson and Kristine L. Kreiter, Sioux Falls, for appellees.

McKEEVER, Circuit Judge.

Claimant appeals the circuit court's judgment denying workers' compensation benefits. We affirm.

## FACTS AND PROCEDURAL HISTORY

Taryl Rohlck (Claimant) was employed by the Lime Lite Casino (Casino) as an occasional security person. He began this employment in January of 1991. Claimant's responsibilities included checking patrons' identifications and escorting unruly patrons from the bar. He normally worked a five-hour shift on Fridays and Saturdays. While employed at the Casino, Claimant was under the supervision of manager Chonette Banks (Banks).

On the night of August 29, 1991, and into the morning hours of August 30, 1991,

Banks was managing the Casino and serving as bartender. One other person, a waitress, was working with Banks. Because it was a week night, there was no security person on duty.

That night, Claimant and a group of friends gathered at the Casino around 10:00 p.m. Claimant and his friends frequented several bars in the downtown Sioux Falls area and then returned to the Casino just prior to closing. Claimant acknowledged consuming five or six beers and one half of a specialty drink during the course of the night.

After Claimant and his friends returned to the Casino, a last call for alcohol was given by Banks. Mikel Thompson (Thompson), a patron in the bar, argued with Banks about the availability of another drink. Thompson referred to Banks as a "prejudice white bitch" and used other derogatory language when Banks denied him a drink. Banks asked Thompson to leave the bar and not return and informed him she was calling the police. Claimant witnessed this exchange and claims he heard a female ask, "Somebody want to give me a hand here?" Banks denied making any statement requesting assistance. Claimant approached Thompson and told him to leave. He put Thompson's arm behind his back and escorted him to the door. Once outside, Thompson and Claimant exchanged kicks. Claimant then reentered the bar and Thompson left the vicinity. Prior to escorting Thompson from the bar that night, Claimant was unacquainted with Thompson and had no dealings with him in his capacity as a security person for the Casino.

Following the altercation, Claimant made plans to go for breakfast. He declined a ride to a local restaurant from Banks, choosing instead to give a friend a ride on his motorcycle. En route to the restaurant, a station wagon driven by Thompson approached Claimant's motorcycle from the rear. Thompson bumped the motorcycle with the station wagon several times. The third bump was at a high rate of speed and caused Claimant's motorcycle to become caught in the grill of the station wagon. The station wagon pushed Claimant's motorcycle down the roadway until it collided with a construction sign, knocking Claimant and his passenger to the ground. Claimant sustained a concussion and multiple lacerations. He was hospitalized for five days. At the time of hospitalization, his blood alcohol level was 0.132 per cent.

On August 27, 1993, Claimant filed a petition for hearing seeking workers' compensation benefits for the injuries sustained in the August 30, 1991 incident. On January 6, 1995, the Department of Labor (Department) entered an order denying him workers' compensation benefits after determining his injuries did not arise out of and in the course of his employment with Casino. Claimant appealed Department's denial of benefits to the circuit court which affirmed Department's denial of workers' compensation benefits but remanded the case to Department for further findings and conclusions on the applicability of the emergency doctrine. On remand, Department issued a supplemental order finding the emergency doctrine inapplicable to Claimant's situation and denying workers' compensation benefits. On appeal the circuit court affirmed Department's supplemental order in all respects. Claimant appeals.

## STANDARD OF REVIEW

Our standard of review of administrative agency decisions is governed by SDCL 1–26–37. This statute provides:

> An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

However, when the issue is a question of law the agency's decision is fully reviewable. *Helms v. Lynn's, Inc.*, 1996 S.D. 8, ¶ 9, 542 N.W.2d 764, 766; *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 231 (S.D.1994); *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357

(S.D.1992); *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D.1991). Great weight is given to findings made and inferences drawn by the agency concerning questions of fact. *Spitzack v. Berg Corp.*, 532 N.W.2d 72, 75 (S.D. 1995).

> We do not substitute our judgment for that of [Department] on the weight of the evidence[.] In other words, even if there is evidence in the record which tends to contradict the Department's factual determination, so long as there is some "substantial evidence" in the record which supports the Department's determination, this court will affirm it.

*Shepherd v. Moorman Mfg.*, 467 N.W.2d 916, 919 (S.D.1991) (citations omitted). In reviewing an agency's determination, "the issue we must determine is whether the record contains substantial evidence to support the agency's determination." *Helms*, 1996 S.D. 8, ¶ 10, 542 N.W.2d at 766 (citations omitted).

## ANALYSIS AND DECISION

██ ██ Before recovery of workers' compensation benefits is allowed, an employer/employee relationship must exist. *See Goodman v. Sioux Steel Co.*, 475 N.W.2d 563, 564 (S.D.1991). An employer/employee relationship may arise either by express or implied contract. SDCL 62-1-3; *Schumacher v. Schumacher*, 67 S.D. 46, 288 N.W. 796, 797 (1939). The express or implied contract of employment defines the course of the employer/employee relationship. Actions or activities performed by an employee beyond the course of the express or implied contract of employment do not create an obligation on the part of the employer to compensate the employee for injuries which may result. "Services voluntarily and gratuitously performed create no liability." *Schumacher*, 288 N.W. at 797. Such services are outside the course of an employee's employment.

██ ██ Department found on the night in question that Claimant entered the Casino as a patron.[1] He proceeded to consume alcohol and socialize with friends, "bar-hop" to other bars and returned to Casino to drink and socialize. Department concluded he was not scheduled to work that evening, nor was he at Casino to perform the duties of a security person. Department determined Claimant's consumption of alcohol, his departure from Casino to frequent other establishments, and his socializing with other patrons while at Casino were acts inconsistent with those normally undertaken by or expected of a security person on duty. Based on Claimant's actions that night and the fact he was not scheduled to work, Department concluded that he was not in the course of his employment the night of August 29, 1991, into the morning hours of August 30, 1991, because Claimant's actions were outside his course of employment with Casino. Department's findings are supported by substantial record evidence.

██ While Claimant was not in the course of his employment on the night in question, under the express circumstances of his employer/employee relationship with Casino, Claimant contends the course of his employment was impliedly extended because his actions in escorting Thompson from the bar that night were in response to a good faith belief an emergency situation existed. Claimant also contends the retaliatory actions of Thompson were incidental to his employment as a security person at Casino, thus extending the course of his employment under *Bearshield v. City of Gregory*, 278 N.W.2d 166 (S.D.1979).

### ██ 1. Emergency Doctrine

██ ██ The emergency doctrine extends the scope of an employee's employment beyond the normal working hours and/or normal work-related tasks when an employee is confronted with an emergency that threatens the employer's property. 1A Larson, Larson's Workmen's Compensation § 28.11, at 5–441 (1995). *See also Martinez v. Workers' Compensation Appeals Bd.*, 15 Cal.3d 982, 127 Cal.Rptr. 150, 152, 544 P.2d 1350, 1352 (1976).[2] We have previously adopted

---

1. Claimant does not take issue with this characterization. In fact, Claimant's brief to this Court describes himself as a patron on the night in question.

2. In *Martinez v. Workers' Compensation Appeals Bd.*, 15 Cal.3d 982, 127 Cal.Rptr. 150, 152, 544 P.2d 1350, 1352 (1976) an employee received injuries while confronting thieves after his work

the emergency doctrine in South Dakota. *Johnson v. Chicago & N.W. Ry. Co.*, 69 S.D. 111, 7 N.W.2d 145, 148 (S.D.1942).[3] The emergency doctrine provides, "[a]n employee does not go outside of the course of his employment, if, when confronted with a sudden emergency, he steps beyond his ordinary duties to protect his employer's property." *Id.* (citations omitted). The doctrine impliedly extends an employee's course of employment to include those tasks necessary to protect the employer's property and employees and extends compensation to injuries incurred while performing such tasks. *Id.;* 1A Larson, *Workmen's Compensation Law* § 28.11, at 5–446 to 5–447.

■■ ■■ However, for the emergency doctrine to apply, "there must be a true emergency as distinguished from a mere benefit to the employer through assistance to someone in trouble." 1A Larson, *Workmen's Compensation Law* § 28.13, at 5–451. Additionally, an emergency does not exist if the actor chooses a non-routine, heroic course for handling the situation. *See Id.* at 5–452. The emergency situation need not be actual so long as the actor acted in a good faith belief the employer's property was in danger. *Id.* at 5–453. An actor's judgment concerning the existence of an emergency situation should not be judged too severely in retrospect. *Id.*

■■ ■■ Department concluded Claimant's 0.132 per cent blood alcohol content affected his judgment concerning the existence of an emergency, his perception of Banks' "request for help" and his handling of the situation. Department was also convinced Claimant did not follow the proper procedure used by security persons for Casino when he confronted Thompson outside the bar and exchanged kicks with him. Furthermore, Department determined the situation between Banks and Thompson concerning the last call for alcohol did not constitute an

emergency. Banks testified she did not feel threatened and did not request assistance from anyone in handling Thompson. Banks testified she did not ask for assistance in removing Thompson from the bar. Claimant's contentions that Banks was in danger from Thompson and that Banks called for assistance in handling the situation, constitute a conflict in evidence which was resolved adversely to Claimant.

■■ ■■ Department is not bound to accept Claimant's testimony and may choose between conflicting evidence. *Kennedy v. Hubbard Milling Co.*, 465 N.W.2d 792, 796 (S.D.1991) (citation omitted). While this Court may not have resolved the conflicting evidence as Department did, we will not substitute our judgment for that of Department on the weight of the evidence. *Shepherd,* 467 N.W.2d at 919. Department's resolution of the conflicting evidence as well as the conclusion an emergency situation did not exist are supported by substantial record evidence and will not be disturbed on review.

■■ **2. The *Bearshield* Exception**

■■ Claimant also contends the retaliatory actions taken by Thompson were naturally related or incidental to his employment as a security person for Casino. Claimant asserts that, though off-duty at the time of the altercation and occurrence of his injuries, the retaliatory conduct of Thompson allows for workers compensation benefits under our holding in *Bearshield v. City of Gregory*, 278 N.W.2d at 169. Claimant's reliance on *Bearshield* is misplaced.

■■ ■■ Worker's compensation statutes "do not limit [their] application to the periods during which an employee is actually engaged in the work that he is hired to perform." *Krier v. Dick's Linoleum Shop*, 78 S.D. 116, 119, 98 N.W.2d 486, 487 (1959). This Court construes the phrase "out

shift had ended. The employee's injuries were held to be compensable because his work-related actions impliedly extended his work hours to include the confrontation with the thieves.

**3.** In *Johnson v. Chicago & N.W. Ry. Co.*, 69 S.D. 111, 7 N.W.2d 145, 148 (1942), a railroad employee hired to shovel coal and keep the railroad

tracks clear was injured while chasing thieves away from the employer's stored coal.

Though the employee was not hired to perform the duties of a guard or watchmen, his employment duties were impliedly extended and his injuries were compensable due to the emergency situation which threatened the employer's property.

of and in the course of employment" liberally. *Howell v. Cardinal Indus., Inc.,* 497 N.W.2d 709, 711 (S.D.1993); *Bearshield,* 278 N.W.2d at 168; *Krier,* 78 S.D. at 119, 98 N.W.2d at 487; *Lang v. Bd. of Educ.,* 70 S.D. 343, 347, 17 N.W.2d 695, 697 (1945); *Meyer v. Roettele,* 64 S.D. 36, 42, 264 N.W. 191, 194 (1935). In determining whether an injury arose out of and in the course of employment, this Court looks to whether the activity which resulted in the injury is one in which the employee might reasonably be expected to engage, *Piper v. Neighborhood Youth Corps,* 90 S.D. 443, 447, 241 N.W.2d 868, 870 (1976), whether the activity which resulted was naturally related or incidental to the employment, *Krier,* 78 S.D. at 119, 98 N.W.2d at 487, or whether the activity was expressly or impliedly authorized by the contract or the nature of employment. *Bearshield,* 278 N.W.2d at 168.

In *Bearshield,* a police officer was killed by an individual with whom he had many contacts as an employee of the City of Gregory. Officer Bearshield was vacationing with his family at the time he was killed. Though he was not actually performing duties for the City of Gregory at the time of his death, Officer Bearshield's death was the direct result of prior confrontations and professional contacts made with the assailant in the course of performing his duties as a police officer. This Court held the retaliatory actions of Bearshield's assailant were incidental to the contacts made by Officer Bearshield in the course of his employment. *Bearshield,* 278 N.W.2d at 170. The retaliatory actions against Officer Bearshield originated while he was in the course of his employment and extended to his off-duty vacation. *Id.*

For coverage to extend to actions and injuries incidental to employment, the actions must have their origin in the course of the employment relationship. Here, unlike Officer Bearshield, Claimant had no dealings with Thompson in the course of his employment as a security person for Casino prior to escorting him from the bar on the morning of August 30, 1991. His only contact with Thompson was as a patron of the bar. Claimant's actions in escorting Thompson from Casino were not done in the course of employment, but rather as a patron. Therefore, the retaliatory actions of Thompson were not related to or incidental to Claimant's employment with Casino.

The question of whether Claimant was in the course of his employment on August 30, 1991, was for Department to determine under all the evidence and the inferences drawn from it. We are bound by Department's findings if there is substantial evidence to support them. Department's findings that Claimant was not in the course of his employment when he sustained his injuries are supported by substantial evidence. Accordingly, the denial of workers' compensation benefits is affirmed.

MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

McKEEVER, Circuit Judge, for AMUNDSON, J., disqualified.