[No. F035445. Fifth Dist. Jan. 17, 2002.]

PAULA WRIGHT, Plaintiff and Respondent, v.
BEVERLY FABRICS, INC., Defendant and Appellant.

**COUNSEL**

Sandall & Penrose, David S. Key; McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Todd W. Baxter and Maiya Yang for Defendant and Appellant.

Curtis & Arata and Gary S. Davis for Plaintiff and Respondent.

**OPINION**

**WISEMAN, J.**—A prominent American playwright, journalist, and political figure, Clare Booth Luce, once said, "No good deed goes unpunished." These words seem especially pertinent when considering the plight of plaintiff and respondent Paula Wright. Wright, by all accounts an excellent employee of defendant and appellant Beverly Fabrics, Inc., had come to the store on her day off to sign a condolence card and contribute money for two other employees who had lost family members. Unfortunately, while there, she injured her back as she helped hold up a collapsing shelf containing store merchandise.

Wright filed suit for negligence. Beverly Fabrics made numerous legal attempts to "nip it in the bud," contending Wright's remedy was confined to workers' compensation. The court held, as a matter of law, Wright's damages were not barred by the workers' compensation exclusive remedy rule. A jury found in favor of Wright and awarded her in excess of $500,000.

On appeal, Wright argues the workers' compensation exclusive remedy rule does not apply, as she was on the premises to engage in a voluntary social activity that exempts her from workers' compensation benefits under Labor Code section 3600, subdivision (a)(9).[1] We sympathize with Wright and the legal Catch-22 she now faces. However, we conclude the law is clear, and reverse the judgment.

### PROCEDURAL AND FACTUAL HISTORIES

In late 1991, Beverly Fabrics, a retail store selling fabric, craft and gift items, hired Wright. When Wright began her employment, she signed a form entitled "Beverly Fabrics, Inc. Security Program," which stated, in bold type: " 'It is the responsibility of every employee to protect the assets of the company at all times.' "

Wright received performance evaluations each year, in which she was evaluated in approximately 30 categories. She generally received "excellent" ratings and had never been disciplined during her employment. In 1996, Wright was noted as the best salesperson in the store and great at customer service. Wright also received favorable evaluations in 1997 and 1998, and was described as a team player and a person who quickly responded to feedback. She received corresponding pay increases.

In 1998, Beverly Fabrics employed approximately 35 people. Wright worked Sundays, 9:00 a.m. to 5:00 p.m., and Mondays, Thursdays and Fridays, 8:00 a.m. to 4:00 p.m. She did not work Tuesdays, Wednesdays or Saturdays. Wright was in charge of the "wearable arts" department, consisting of jewelry and paint, glue and iron-on transfers for fabrics. Her primary responsibilities included ordering, pricing and stocking merchandise, which required heavy lifting, bending, squatting and climbing ladders. Wright, however, was trained to do almost any activity in the store.

On Wednesday, June 3, 1998, Wright went to work, despite the fact it was her day off, to sign a condolence card and contribute money for two employees who had lost family members. She was not requested by anyone

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

with Beverly Fabrics to make a donation or sign any cards. It was not uncommon for employees to come into the store on a day off to visit, and they were permitted to shop in the store and assist customers on their days off. However, employees were not paid for working on these days.

Wright was visiting in the back of the store with fellow employees Donna Bell and Colleen Dutro, who were both working at the time. There were no customers in the area. Bell was standing about one foot from a shelving unit when she noticed the shelf move. Heavy clay pots were stacked at the end of the shelf where the three women were standing. The shelf also held baskets, and there were boxes containing clay pots on the nearby floor. Wright was standing approximately two to four feet from the shelf, with her back to it. Unbeknownst to the three women, the shelf was missing some braces.

Both Bell and Dutro grabbed the shelf to stop it from moving. Wright first became aware that the shelf was falling when Dutro or Bell commented on it. When Wright saw the shelf falling, she moved about six feet from where she was standing, positioned herself between Dutro and Bell, straddling boxes, and grabbed the shelf. Wright immediately felt pain down her back. In responding to the falling shelf, all three women testified that they acted out of instinct.

Soon after Wright, Bell and Dutro grabbed the falling shelf, other employees came to assist. Melinda McRee, the store's manager, also grabbed the shelf and told everyone if they could not hold it, to let go. Dutro also advised any person to let go if she was hurting. In response, Wright stated her back was hurting, but she could not let go. While Wright, Dutro and McRee were holding up the shelf, four other employees started taking items off of it. When the shelf was unloaded, it was pushed upright. Bell then released her hold on the shelf and went to find braces for it and a repairman. The other women continued to hold the shelf.

During the time the shelf was being held up and unloaded, customers were kept out of the area and precluded from providing any assistance. A customer who insisted on coming into the area was told by everyone to get out, and the area was roped off to prevent injury to customers. Had Wright not been an employee of Beverly Fabrics, she would not have been allowed to provide any assistance. Further, if Wright had failed to volunteer to help, she would have been asked by her coworkers, despite the fact it was her day off.

On February 26, 1999, Wright filed suit against Beverly Fabrics for negligence, based on injuries she received as a result of the incident on June 3, 1998. Beverly Fabrics filed its answer, asserting as an affirmative defense

that Wright's sole and exclusive remedy was under the California workers' compensation statutes.

The court denied Beverly Fabrics' motion for summary judgment. A four-day jury trial began on December 13, 1999. At the close of evidence, Beverly Fabrics moved for a judgment of nonsuit, arguing the exclusive remedy provisions of the Workers' Compensation Act precluded Wright's claim. The court denied the motion. The court also denied Beverly Fabrics' request for jury instructions directed at whether Wright was acting in the course of her employment. The court concluded that whether Wright was acting in the course and scope of her employment when she was injured should not be decided by the jury because there was no dispute factually regarding what occurred. The court also found that, as a matter of law, the evidence established Wright was not in the course of her employment at the time of her injury.

The jury returned a verdict in favor of Wright and awarded her $152,905.13 in economic damages and $360,000 in noneconomic damages, for a total award of $512,905.13. Judgment was entered. Beverly Fabrics moved for judgment notwithstanding the verdict or, in the alternative, for a new trial, and the court denied both motions.

## DISCUSSION

Beverly Fabrics argues the court erred in failing to grant its motion for nonsuit and/or motion for judgment notwithstanding the verdict. Alternatively, Beverly Fabrics maintains the court failed to properly instruct the jury on whether Wright was acting in the course of her employment. Beverly Fabrics' contentions can be summarized into one key issue: whether the court erred in finding, as a matter of law, Wright's damages were not barred by the workers' compensation exclusive remedy rule.

## I. Standard of review

In reviewing the denial of a motion for nonsuit, appellate courts evaluate the evidence in the light most favorable to the plaintiff. Reversal is only proper when no substantial evidence exists tending to prove each element of the plaintiff's case. (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 263 [80 Cal.Rptr.2d 196].) The denial of a motion for judgment notwithstanding the verdict is similarly reviewed to determine whether there is any substantial evidence supporting the jury's verdict. (*Shapiro v. Prudential Property & Casualty Co.* (1997) 52 Cal.App.4th 722, 730 [60 Cal.Rptr.2d 698].)

However, if the issues deal solely with statutory interpretation and application of a statute to undisputed facts, "[r]eview of such issues takes place de novo." (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284 [73 Cal.Rptr.2d 596]; see also *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960] [when the decisive facts are undisputed, we are confronted with a question of law and not bound by findings of the trial court].)

We turn now to the merits of Beverly Fabrics' claim.

## II. *Workers' compensation exclusive remedy rule*

■■■ Section 3602 provides that the sole and exclusive remedy of an injured employee against an employer is the right to recover workers' compensation benefits, 1) if "the conditions of compensation set forth in [s]ection 3600 concur," and 2) unless an exception specified in sections 3602, 3706 or 4558 applies. (See also *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 970 [108 Cal.Rptr.2d 34].)

Section 3600 lists a number of conditions that must exist in order for the injured employee to recover workers' compensation benefits from his or her employer. Section 3600 states, in relevant part:

"(a) Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . in those cases where the following conditions of compensation concur:

"(1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.

"(3) Where the injury is proximately caused by the employment, either with or without negligence. [¶] . . . [¶]

"(9) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. . . ."

We recently explained in *Lenk v. Total-Western, Inc.*, *supra*, 89 Cal.App.4th at page 971: "If any of these conditions does not exist, the employee may bring a civil action against the employer. [Citations.] '[C]ase law . . . has greatly expanded the exceptions to the exclusivity rule . . . .' [Citation.] However, there is no exception to the exclusive remedy rule simply because an injury suffered on the job is not compensable under workers' compensation law. [Citations.]"

Beverly Fabrics contends that at the time of her injury, Wright was performing a service growing out of and incidental to her employment and was acting within the course of her employment. Wright, on the other hand, argues the conditions of compensation set forth in section 3600 have not been met because her injury arose out of the voluntary participation in an off-duty social activity not constituting part of her work-related duties.

██ Whether an employee's injury arose out of and in the course of her employment is generally a question of fact to be determined in light of the circumstances of the particular case. (*Industrial Ind. Exch. v. Ind. Acc. Com.* (1945) 26 Cal.2d 130, 136 [156 P.2d 926]; *Eckis v. Sea World Corp.* (1976) 64 Cal.App.3d 1, 7 [134 Cal.Rptr. 183].) However, where the facts are undisputed, resolution of the question becomes a matter of law. (*Eckis, supra*, at p. 7; see also *Laeng v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 774 [100 Cal.Rptr. 377, 494 P.2d 1]; *Ezzy v. Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252, 259 [194 Cal.Rptr. 90] [where no dispute as to facts, question of whether injury suffered in course of employment is one of law].) In this case, the facts are undisputed. We therefore decide the question as a matter of law and give no deference to the trial court's findings. (See *Gonzalez v. Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 514, 519 [230 Cal.Rptr. 649].)

██ In resolving this issue, we are guided by the Legislature's command in section 3202 that workers' compensation laws "be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.) As explained by the California Supreme Court in *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150]: "This command governs all aspects of workers' compensation; it applies to factual as well as statutory construction. [Citations.] Thus, '[i]f a provision in [the workers' compensation laws] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construction is possible.' [Citation.] The rule of liberal construction 'is not altered because a plaintiff believes that [she] can establish negligence on the part of [her] employer and brings a civil suit for damages.'

[Citation.] It requires that we liberally construe the [laws] 'in favor of *awarding work*[*ers'*] *compensation*, not in permitting civil litigation. [Citation.]' [Citations.]"

 The Supreme Court articulated the requirements of section 3600 in *LaTourette v. Workers' Comp. Appeals Bd.* (1998) 17 Cal.4th 644, 651 [72 Cal.Rptr.2d 217, 951 P.2d 1184]:

" 'The requirement of . . . section 3600 is twofold. On the one hand, the injury must occur "in the course of the employment." This concept "ordinarily refers to the time, place, and circumstances under which the injury occurs." [Citation.] Thus " '[a]n employee is in the "course of his employment" when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do.' " [Citation.] And, ipso facto, an employee acts within the course of his employment when " 'performing a duty imposed upon him by his employer and one necessary to perform before the terms of the contract [are] mutually satisfied.' " ' [Citation.]

" 'On the other hand, the statute requires that an injury "arise out of" the employment . . . . It has long been settled that for an injury to "arise out of the employment" it must "occur by reason of a condition or incident of [the] employment. . . ." [Citation.] That is, the employment and the injury must be linked in some causal fashion.' [Citation.]" (Fn. omitted.)

 We find Wright was acting in the course of her employment at the time of her injury and her injury arose out of her employment. Injuries sustained while an employee is performing tasks within his or her employment contract but outside normal work hours are within the course of employment. The rationale is that the employee is still acting in furtherance of the employer's business. (See *Gardner v. Industrial Acc. Com.* (1946) 73 Cal.App.2d 361, 362-367 [166 P.2d 362] [bartender's injuries after his regular work hours while ejecting an intoxicated patron who was refused service during working hours arose out of and were in course of employment]; *Bethlehem Steel Co. v. Ind. Acc. Com.* (1945) 70 Cal.App.2d 382, 388-389 [161 P.2d 59] [injuries sustained by employee after checking out from work were compensable as arising out of and in course of employment where they occurred while employee was picking up war savings bond in lieu of part of his wages]; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed., Tancor edit., 2001) Injury and Employment, § 4.116, p. 4-127.)

The combination of a personal act performed outside of regular working hours with the performance of acts in furtherance of the employer's business

does not defeat a finding that the employee was acting in the course of his or her employment. (See *Laing v. Occidental Life Ins. Co.* (1966) 244 Cal.App.2d 811, 816-817 [53 Cal.Rptr. 681] [in determining whether plant manager was injured in course of employment, fact he was on his way to baseball game and had not planned to work the day of the injury was immaterial where he undertook to assist in repairs on the plant premises and was doing so in his capacity as an employee for the benefit of his employer]; *J .J. Newberry Co. v. Continental Cas. Co.* (1964) 229 Cal.App.2d 728, 729, 731-732 [40 Cal.Rptr. 509] [store manager was injured in scope of his employment and in a custodial capacity when he returned to store after hours to make personal phone call in violation of orders, investigated a light in stockroom, and was attacked by burglars]; *Scott v. Pacific Coast Borax Co.* (1956) 140 Cal.App.2d 173, 176, 179-182 [294 P.2d 1039] [gas station employee who returned to work after hours for personal reasons and was injured assisting a coworker fix a gas pump sustained injuries in course of employment]; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, Injury and Employment, § 4.116, p. 4-127.)

We find the language in *Scott v. Pacific Coast Borax Co., supra,* 140 Cal.App.2d at pages 179-180, particularly instructive in this case: "Plaintiff was requested by a fellow employee, who at the time was in charge of the gasoline station, to hold straight a handle on a gasoline pump so that he might complete repairs thereon by tightening some U-bolts. Although plaintiff's regular working hours had ended about two and a half hours earlier, plaintiff consented to lend the required assistance, held the handle straight until the bolts were tightened, and then stepped back from the pump. Plaintiff was standing about 3 feet from the pump . . . when the pump exploded . . . . These being the salient facts, it cannot be doubted that plaintiff was engaged in something incidental to his employment in furthering and facilitating his employer's business. Had [the fellow employee] been repairing the pump several hours earlier during plaintiff's shift, and had plaintiff then rendered the requested assistance, it could not be doubted that in so doing plaintiff would be performing a service within the reasonable and expected scope of his duties and that the resultant injury arose out of and occurred within the course of his employment. Plaintiff's general work in attending the gasoline station clearly encompassed so simple a task as holding upright a pump handle while another worker tightened its bolts. There was no apparent increase in the risk of injury to himself beyond that contemplated by the terms of his employment. He would be doing no more than that which any reasonable employer would naturally expect from a responsible worker and which any employee with a sense of job obligation would do for a coworker."

So is the case here. Wright was assisting fellow employees in holding up a collapsing shelf. She was doing no more than what a reasonable employer

would expect from a responsible employee in her position. There can be no doubt that Wright was engaged in an activity incidental to her employment in furtherance of her employer's business and protecting its assets. As explained in *Scott v. Pacific Coast Borax Co., supra,* 140 Cal.App.2d at page 180: "It is well established that a workman who sustains injury while rendering reasonably needed assistance to a fellow workman in furtherance of the employer's business is considered to have suffered an injury arising out of and in the course of his employment when the act done is within the reasonable contemplation of what the employee may do in the service of his employer." (See also *Bethlehem Steel Co. v. Ind. Acc. Com., supra,* 70 Cal.App.2d at p. 387 [" 'If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. . . .' "]; *Payne v. Industrial Acc. Com.* (1927) 84 Cal.App. 657, 660 [258 P. 620] ["acts incidental to [an employee's] regular duties, if of benefit to the employer and not personal to the employee, are within the scope of his employment"].)

Wright's reliance on the restriction for social activities set forth in section 3600, subdivision (a)(9), and *Ezzy v. Workers' Comp. Appeals Bd., supra,* 146 Cal.App.3d 252, is misplaced. Section 3600, subdivision (a)(9), precludes recovery of workers' compensation benefits for injuries arising out of voluntary participation in off-duty recreational, social or athletic activities that are not part of an employee's work-related duties. However, there is no preclusion if the activity that resulted in the injury is a reasonable expectancy of the employment. (§ 3600, subd. (a)(9); see also *Gonzalez v. Workers' Comp. Appeals Bd., supra,* 186 Cal.App.3d at pp. 518-521.) *Ezzy v. Workers' Comp. Appeals Bd.,* articulated the test for what constitutes a "reasonable expectancy of employment." An activity is deemed a reasonable expectancy of employment if the employee subjectively believed that his or her participation was expected by the employer and that belief was objectively reasonable. (*Ezzy v. Workers' Comp. Appeals Bd., supra,* 146 Cal.App.3d at p. 260.)

Here, Wright was not engaged in a recreational or social activity *at the time of her injury,* and her injury did not arise out of participation in any such activity. Wright was not hurt while she was signing a condolence card or visiting with coworkers. She was hurt holding up a shelf in an effort to protect the property of her employer, an activity reasonably contemplated by her employment. Simply put, Wright's actions in assisting her coworkers in holding up the shelf were taken in furtherance of her employer's business and were reasonably expected by her employer. As a result, we cannot find that section 3600, subdivision (a)(9), or *Ezzy v. Workers' Comp. Appeals Bd., supra,* 146 Cal.App.3d 252, acts as a bar to workers' compensation benefits. (See *Todd v. Workers' Comp. Appeals Bd.* (1988) 198 Cal.App.3d 757,

759-760 [243 Cal.Rptr. 925] [Legislature's intent in enacting § 3600, subd. (a)(9), was to eliminate from workers' compensation coverage injuries sustained *during* recreational, social or athletic activities that are only remotely work-related]; *Wilson v. Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 902, 904-909 [239 Cal.Rptr. 719] [workers' compensation coverage extended to off-duty police officer injured while jogging, an activity reasonably believed necessary to maintain special fitness required for emergency reaction team membership].)

Wright argues she responded to an emergency situation out of instinct, without conscious thought, and made a "split second" decision to assist in holding up the collapsing shelf. Wright contends, in such a case, it is not appropriate to examine the activity being performed at the time of the injury, but to instead look to the reason the employee was on the premises. Wright argues she was on the premises to engage in a voluntary social activity that exempts her from workers' compensation benefits under section 3600, subdivision (a)(9). We find no such exception to well settled workers' compensation law for split second or instinctive decisions. To the contrary, California courts have recognized that injuries sustained by an employee during emergency efforts to save the employer's property from fire, theft or other hazards are within the course of employment and compensable under workers' compensation laws. (See, e.g., *Martinez v. Workers' Comp. Appeals Bd.* (1976) 15 Cal.3d 982, 986-987 [127 Cal.Rptr. 150, 544 P.2d 1350]; *J. J. Newberry Co. v. Continental Cas. Co.*, *supra*, 229 Cal.App.2d at pp. 731-732.)

In sum, we conclude Wright's injuries arose out of and in the course of her employment with Beverly Fabrics. Thus, the court erred in finding Wright's damages were not barred by the workers' compensation exclusive remedy rule.[2]

## DISPOSITION

The judgment is reversed and the court is directed to enter an order granting Beverly Fabrics' motion for nonsuit. Costs are awarded to Beverly Fabrics.

Vartabedian, Acting P. J., and Levy, J., concurred.

A petition for a rehearing was denied February 4, 2002, and respondent's petition for review by the Supreme Court was denied May 1, 2002. George, C. J., Kennard, J., and Baxter, J., were of the opinion that petition should be granted.

---

[2]In light of our conclusion, it is not necessary to take judicial notice of Beverly Fabrics' legislative intent materials underlying section 3600, subdivision (a)(2) and (9).