Filed 1/6/15  Wendy Road Storage v. Teleflex CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| WENDY ROAD STORAGE, LLC, <br><br> Cross-complainant and Respondent. <br><br> v. <br><br> TELEFLEX INCORPORATED, <br><br> Cross-defendant and Appellant. | 2d Civil No. B251133 <br> (Super. Ct. No. 56-2010-00379340-CU-BC-SIM) <br> (Ventura County) |

Teleflex Incorporated (Teleflex) appeals a judgment after jury verdict in favor of Wendy Road Storage, LLC (Wendy Road) on a cross-complaint for intentional interference with prospective economic advantage.  Teleflex contends substantial evidence does not support the verdict because Teleflex was not a stranger to the economic relationship with which it allegedly interfered; the jury would not have found Teleflex's disruptive conduct was independently wrongful by an objective legal standard if it had been properly instructed; the award of $250,000 in compensatory damages was speculative; and the $1 million punitive damage award was not supported by substantial evidence of malice, oppression or fraud.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1986, Teleflex acquired contaminated property in Thousand Oaks (the property) and began remediation.  Telair International, Inc. (Telair) is a wholly owned subsidiary of Teleflex.  By 2003, Telair owned and was remediating the property.  In

2004, real estate developer Paul Bollinger approached Telair about buying the property to develop an office park.

Larry Miller is executive vice president and general counsel of both Teleflex and Telair. Jeff Jacobs is an officer of both Teleflex and Telair. At trial, counsel jointly represented Teleflex and Telair.

Bollinger is a principal of Wendy Road. He also has interests in Bollinger Construction, Bollinger Development, and the Bollinger Family Trust (collectively, "the Bollinger entities").

In 2004, Wendy Road and Telair formed an LLC, "Telair-Wendy Road LLC" (the LLC), to buy and develop the property into a 28-building office park. The LLC's operating agreement provided that the LLC would buy the property from Telair for $5 million, develop it, and market the 28 buildings, with Wendy Road acting as the managing partner. Telair contributed $2.75 million in cash. Wendy Road and Telair were the only members of the LLC. Only Telair and Wendy Road were entitled to distributions under the operating agreement.

Teleflex also signed the LLC's operating agreement, but "[s]olely for purposes of Section 7.6." In section 7.6, Teleflex and Telair agreed to indemnify, defend, and hold harmless Wendy Road, Bollinger, the LLC, and their successors and assigns against claims arising from existing environmental contamination on the property. Teleflex and Telair also agreed to give equivalent indemnification to buyers of the buildings. Telair, but not Teleflex, agreed that in the event of foreclosure, its indemnity obligation would be assigned to the project's lender. Bollinger testified that no bank would have provided financing without Teleflex's agreement to indemnify environmental claims.

In 2007, the LLC borrowed $26 million from First California Bank for project construction. Paul Bollinger and the Bollinger entities guaranteed the loan. When the loan matured in 2008, the LLC went into default. The bank extended the loan, but required Bollinger to execute a deed of trust encumbering his home as collateral. The extension also required a balloon payment in five months. By then, construction was

2.

complete, but the LLC had not sold any buildings. The construction loan went into default when the balloon payment became due on May 14, 2009.

Bollinger and Wendy Road wished to delay foreclosure long enough to sell the buildings and recover a profit, but Telair had concluded that its best interest would be served by treating its investment in the project as a loss. Telair's accounting director concluded in September 2009 that Telair should "write-off" its investment in the LLC and take a tax deduction.

The LLC's attorney negotiated with the bank and threatened to file for bankruptcy in an attempt to forestall foreclosure. Miller and Jacobs rejected the idea of filing for bankruptcy. Neither member of the LLC had a unilateral right to file a petition for bankruptcy under the terms of the operating agreement.

The LLC's assets always exceeded its debts, according to Teleflex's expert. The LLC had little debt aside from the construction loan, and the buildings added value to the property. Telair's assets exceeded $200 million at the time of the settlement negotiations.

The bank initiated nonjudicial foreclosure proceedings against the project and against Bollinger's home, with a foreclosure sale date set about one year away, for June 2010. When the bank would not agree to further extend the duration of the loan, Bollinger said, "[I]t became, you know, how do we do a friendly foreclosure and still make money in the event the project sells for more than the loan amount." Bollinger testified that the bank would not agree to give the LLC part of future sales, but appeared to be open to paying cash "up front" in exchange for the LLC's agreement not to resist the foreclosure.

The parties negotiated with the bank and reached a settlement on June 29, 2010, pursuant to which the LLC cooperated in the foreclosure of the property, the bank released claims against Bollinger and his home, and Teleflex received $300,000 from the bank in the form of six $50,000 payments upon the future sale of the first six buildings.

During negotiations, Wendy Road and Bollinger objected to the proposed payment to Teleflex on the grounds that the money was an LLC asset paid in exchange

for the LLC's cooperation with the foreclosure. About a month before the settlement, the LLC's attorney wrote to Miller and Jacobs, "The company's position is that the cash is being paid to avoid a bankruptcy and to allow a cooperative foreclosure." Bollinger also expressed his objection and believed the money should go to the LLC.

In a conference call with Miller and Jacobs, the LLC's attorney said the "money is a corporate asset and it should come into the company." Miller responded, "We're not going to allow the company to sign anything if the money doesn't go to Teleflex," and "It's time for us to take some money. [Bollinger has] taken all the money out of this deal so far," according to the LLC's attorney. It was a "very heated conversation," and both Bollinger and Miller were very upset. Miller also said, "We're not going to agree to indemnify any future building owners, which we would do if it was sold through the LLC. We won't do it if there [is] a foreclosure, and we want money for that." When the LLC's attorney relayed Teleflex's position about indemnity to the bank, the bank's negotiator said "the Bank was not particularly concerned about the additional indemnities since Teleflex [was] already obligated to clean up the property," according to the LLC's attorney. The attorney wrote in an e-mail to Miller and Jacobs, "[The bank's negotiator] said the Bank didn't care who got the money but it definitely would not pay $500,000. I asked if the Bank would do the deal without Teleflex's agreement, and he said it might."

Bollinger testified that about two weeks before the settlement, he presented to Miller and Jacobs an attorney's opinion about filing for bankruptcy. Miller told Bollinger, "[I]f [Bollinger] went down that path . . . [Miller] was going to see [him] and [his]wife got wiped out." About two weeks before the settlement, Telair's vice president of taxation wrote in an e-mail to Miller and Jacobs that "[t]he formal abandonment would be good for us."

Bollinger testified that he authorized Miller and Jacobs to negotiate with the bank, but only "on behalf of [the LLC] partnership." In an e-mail, Bollinger authorized the bank's president "to talk to Larry Miller or Jeff Jacobs without any restrictions." Bollinger testified that he did not understand that Miller and Jacobs would

4.

be negotiating on behalf of Teleflex, and did not authorize them to do so. Jacobs acknowledged that his discussions with the bank were "on behalf of Teleflex." Jacobs also acknowledged that the LLC did not benefit from the bank's payments to Teleflex.

After the foreclosure, Telair sued Wendy Road, Bollinger, the Bollinger entities, and Bollinger's wife for multiple claims arising from the management of the project. Telair claimed that Wendy Road mismanaged the project, that Bollinger and his wife converted the LLC's assets, and that the Bollinger entities interfered with Telair's prospective economic benefit in the LLC's assets by acquiring and developing a competing property, among other things.

Wendy Road responded with a cross-complaint against Telair, Teleflex, Miller, and the LLC. Among its many causes of action, Wendy Road asserted only one against Teleflex: intentional interference with prospective economic advantage. Wendy Road alleged that, as a member of the LLC, it had a prospective economic benefit in the LLC's assets. It alleged that Miller and Teleflex interfered with this benefit "by demanding from [the bank] that Teleflex receive $300,000 from any future sales . . . of the construction project . . . as part of any settlement agreement between [the bank] and [the LLC]"; and by representing to the bank that unless the bank agreed to the payment, Teleflex and Miller "would cause Telair and [the LLC] to abandon any settlement discussions," and "Teleflex and Telair would not provide any environmental indemnity agreements if the property was foreclosed upon."

At trial, Jacobs testified that Teleflex had a legitimate interest in being paid $300,000 by the bank because Teleflex increased its environmental indemnity obligations under the terms of the settlement agreement. Teleflex renewed its existing indemnity obligations under the LLC operating agreement and agreed to indemnify each subsequent purchaser or encumberer of an interest in the project. Miller and Jacobs testified that the

5.

bank wanted Teleflex's "name on" the post-foreclosure indemnity obligations,[1] and Teleflex was unwilling to do that without compensation.

The trial court instructed the jury that protection of one's business interests is a defense to intentional interference with prospective economic relations, and "Teleflex asserts that it was justified in obtaining the $300,000 payment from [the bank] . . . because such payment was made to compensate Teleflex for committing to provide ongoing environmental remediation and indemnity on the land used for the Project." The special verdict form asked whether Teleflex's conduct was "privileged or justified" and the jury answered "no." Wendy Road presented evidence that Teleflex had a preexisting duty to indemnify future building buyers, that Telair had sufficient assets to meet indemnity demands, that "the Bank was not particularly concerned about the additional indemnities since Teleflex [was] already obligated to clean up the property," and "the Bank didn't care who got the money."

The parties did not submit instructions on the elements of Wendy Road's claim against Teleflex for intentional interference with prospective economic advantage. Teleflex later wrote that the omission "seem[s] to have escaped both parties as well as the Court." The parties jointly submitted the jury instructions and the special verdict form which the trial court gave as requested. The voluminous instructions covered many claims and cross-claims among multiple parties, and the verdict form included 107 questions. There was, however, an instruction on Telair's claim against Wendy Road for intentional interference with prospective economic relations that correctly stated all of the essential elements of the tort. The special verdict form included specific questions for each element of Wendy Road's claim against Teleflex: "76. Did Wendy Road Storage and Telair-Wendy Road, LLC have an economic relationship that probably would have resulted in an economic benefit to Wendy Road Storage?"; "77. Did Teleflex Incorporated ('Teleflex') know of that relationship?"; "78. Did Teleflex intend to disrupt

---

[1] Miller testified that Teleflex "is [a] one and a half billion dollars in sales company," while Telair had $200 million in assets in 2010.

the relationship?"; "79. Did Teleflex engage in independently wrongful conduct?"; "80. Was the relationship disrupted?"; and "81. Was Teleflex's wrongful conduct a substantial factor in causing harm to Wendy Road Storage?" The jury answered "yes" to each question.

The jury awarded Wendy Road $250,000 in compensatory damages and $1 million in punitive damages against Teleflex on Wendy Road's cause of action for intentional interference with prospective economic advantage. The jury specially found that Teleflex engaged in independently wrongful conduct. It also awarded Wendy Road and Bollinger damages against Telair on causes of action that are not the subject of this appeal. The jury found against Telair on all of the causes of action in its complaint.

DISCUSSION

We review each of Teleflex's contentions on appeal for substantial evidence. (*Wright v. Beverly Fabrics, Inc.* (2002) 95 Cal.App.4th 346, 351 [appeal from denial of motion for nonsuit]; *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138 [appeal from denial of motion for judgment notwithstanding the verdict]; *Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp. U.S.A.* (2013) 221 Cal.App.4th 867, 877 [challenge to award of compensatory and punitive damages].) We view the evidence in the light most favorable to the jury's determination, drawing all reasonable inferences in support. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925.) These inferences must rest on the evidence and may not be the result of mere speculation or conjecture. (*Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 260, 264 [evidence could not support finding that defendants conspired to interfere with their own economic relations with the plaintiff].) We do not reweigh evidence, resolve conflicts in the evidence, or reweigh credibility. (*Nestle*, at p. 925.)

The elements of interference with prospective economic advantage are "'"(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional conduct on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the

7.

plaintiff proximately caused by the acts of the defendant."'" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153.) Teleflex contends the evidence of an economic relationship, intentional disruptive conduct, and economic harm is insufficient.

*Economic Relationship Between Wendy Road and a Third Party*

Intentional interference with prospective economic advantage "can only be asserted against a stranger to the relationship." (*Kasparian v. County of Los Angeles*, *supra*, 38 Cal.App.4th 242, 262, italics omitted; see also *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514 [tortious interference with contract].) Teleflex contends the trial court should have granted its motion for nonsuit because it was not a stranger to the economic relationship at issue. We disagree.

There is substantial evidence that Teleflex was a stranger to Wendy Road's economic relationship with the LLC because Teleflex was neither a member of the LLC nor a party to the construction loan. Teleflex argues that it had an economic interest in the development project because it was Telair's parent. That a corporation's subsidiary is a party to a contract does not alone make it a party to the contract for purposes of the "stranger" requirement. (*Asahi Kasei Pharma Corp. v. Actelion Ltd.* (2013) 222 Cal.App.4th 945, 961-962.) Moreover, Wendy Road's claim was not based on its general interest in the development project. It was based on Wendy Road's relationship with the LLC and the prospective distribution Wendy Road expected as a member of the LLC. Wendy Road alleged that, as a member of the LLC, it had a prospective economic benefit in the LLC's assets with which Teleflex interfered. The jointly submitted verdict form asked whether Wendy Road and the LLC had an economic relationship that probably would have resulted in an economic benefit to Wendy Road. Teleflex was not a member of the LLC.

Teleflex points out that it signed the LLC's operating agreement and the settlement agreement with the bank. But it signed the LLC agreement solely for purposes of section 7.6 and it was not a party to the construction loan. Teleflex had no right to distribution of the LLC's assets under the terms of the operating agreement. Wendy Road

8.

presented substantial evidence that, but for Teleflex's interference, the bank would have paid the LLC $300,000 in exchange for the LLC's agreement to cooperate with foreclosure on the construction loan, and that Wendy Road had a prospective interest in the money as a member of the LLC entitled to distribution. That Teleflex presented contrary evidence about the bank's reasons for paying the money is immaterial. Teleflex presented to the jury its theory that the money was a bona fide payment for an indemnity agreement. The jury rejected it. When two or more inferences can reasonably be drawn from the facts, we are without power to substitute our deductions for those of the jury. (*Hiser v. Bell Helicopter Textron, Inc.* (2003) 111 Cal.App.4th 640, 652.) Substantial evidence supports a finding that Teleflex interfered with an economic relationship in which it had no interest.

This case is unlike *Kasparian v. County of Los Angeles*, *supra*, 38 Cal.App.4th 242, 262, in which the court reversed a judgment for conspiracy to commit intentional interference with prospective economic advantage against defendants who were "part[ies] to the relationship from which the plaintiff's anticipated economic advantage would arise." In *Kasparian*, the defendants were the parties from whom plaintiff expected to receive money in a buy-out deal with which a third party interfered. The defendants could not conspire with the third party to interfere with that advantage as a matter of law, because they could not be liable for the underlying tort. Here, Wendy Road did not expect to receive any money from Teleflex. It expected payment from the bank to the LLC, and distribution of that payment to the LLC's members. The anticipated economic advantage could not arise from Teleflex.

*Intentional Disruptive Conduct*

To support a cause of action for intentional interference with prospective economic advantage, the plaintiff must show disruptive conduct that is independently wrongful, that is, by some measure other than the interference itself. (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393.) The conduct must be proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard. (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1152.)

9.

The jury found that "Teleflex engage[d] in independently wrongful conduct," by which it "intend[ed] to disrupt," an economic relationship between Wendy Road and the LLC "that probably would have resulted in an economic benefit to Wendy Road," and that Teleflex's conduct was a substantial factor in causing harm to Wendy Road. Substantial evidence supports these findings. The instructions and the verdict form did not identify the specific legal standard that proscribed Teleflex's allegedly wrongful conduct, but Teleflex invited that error. (*Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1653.)

At trial, Wendy Road did not specify the legal standard that proscribed Teleflex's conduct. In opposition to the post trial motions, it argued that Teleflex's conduct was extortion. On appeal, Wendy Road argues the conduct was also conversion and fraud. Substantial evidence supports a finding that Teleflex converted an LLC asset, $300,000, to its own use and did so by threatening to withhold indemnity letters it was contractually obligated to provide and by threatening to withhold its subsidiary's signature from a settlement agreement that was in the LLC's interest.

Teleflex contends that if the jury had been instructed on the underlying elements of extortion, conversion, or fraud, Teleflex would have prevailed. It contends the jury would have found there was no wrongful threat supporting extortion because Miller only reminded Bollinger of the bank's legal right to foreclose on his home. Teleflex contends the jury would not have found the LLC had an immediate possessory right to the $300,000 supporting conversion. It contends the jury would not have found intentional concealment supporting fraud because Bollinger authorized Miller to negotiate on behalf of Teleflex and the settlement agreement disclosed the payment to Teleflex. We do not know what the jury would have found if it had been instructed on the elements of extortion, conversion, fraud, or some other underlying wrongful conduct, because Teleflex agreed to instructions that did not specify the alleged independently wrongful conduct. There was substantial evidence, however, that the bank was prepared to forego its right to foreclose on Bollinger's home, and that Bollinger only authorized

10.

Miller and Jacobs to negotiate on behalf of the LLC. The record is sufficient to support the jury's verdict.

Had the parties asked for CACI No. 2202, presumably they would have read the directions for use. The directions for CACI No. 2202 [intentional interference with prospective economic relations] provide, "Whether the conduct alleged qualifies as wrongful if proven or falls within the privilege of fair competition is resolved by the court as a matter of law. If the court lets the case go to trial, the jury's role is not to determine wrongfulness, but simply to find whether or not the defendant engaged in the conduct. If the conduct is tortious, the judge should instruct on the elements of the tort." But the parties did not ask the trial court to determine wrongfulness or instruct on elements of an underlying tort, either as to Wendy Road's interference claim or as to Telair's. The CACI No. 2202 instruction on Telair's claim, drafted by counsel for Teleflex and Telair, asked only whether the Bollinger entities acted "unfairly and deceptively" by developing the competing property. It did not set forth the elements of unfair competition or any other underlying tort. Whether CACI No. 2202 would have proven fruitful for Teleflex is unlikely and, at best, speculative.

"The doctrine of invited error bars an appellant from attacking a verdict that resulted from a jury instruction given at the appellant's request." (*Stevens v. Owens-Corning Fiberglas Corp.*, *supra*, 49 Cal.App.4th 1645, 1653 [stipulated instruction on assessing lost pension benefits barred appellate claim that statute prohibited recovery]; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685-1687 [jointly drafted special verdict form inviting inconsistent verdict barred appellate review].) It is true that a "party harmed by an instruction's incorrect statement of law may assert instructional error on appeal without objecting to the instruction in the trial court or proposing its own correct instruction" (*National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 440), but there was no incorrect statement of law here and Teleflex affirmatively agreed to the instructions. In *National Medical Transportation*, upon which Teleflex relies, the instruction on negligent interference with prospective economic advantage "omit[ed] the tort's material element of 'independent wrongfulness.'"

11.

(*Id.* at p. 439.) The defendants did not waive or invite the error by failing to object because the instruction was an "incorrect statement of law." (*Id.* at p. 440.) Furthermore, the "rules of waiver and estoppel" did not apply because "*Della Penna* announced [the] retroactive new rule of law [requiring independent wrongful conduct] after the verdicts." (*Id.* at p. 439.) Here, the only instruction on the tort included all the essential elements and the jury found that Teleflex engaged in independent wrongful conduct. The *Della Penna* rule was settled before Teleflex agreed to the instructions. It is an elementary principle of appellate law that courts will not review invited error. (*Stevens v. Owens-Corning Fiberglas Corp.*, *supra*, 49 Cal.App.4th 1645, 1655.)

### *Economic Harm*

Teleflex contends there was no substantial evidence to support the jury's finding that Wendy Road had a reasonable expectation of a commercial benefit from a third party. It argues that even if the bank would have paid $300,000 to the LLC, it was highly speculative whether Wendy Road would receive any of that money because it was one of two limited partners. Moreover, Wendy Road's counsel said in closing argument that the LLC owed money to senior creditors and "Wendy Road Storage won't see a dime" of the judgment.

The arguments of counsel are not evidence. Wendy Road presented substantial evidence the LLC had "hardly any" debt aside from the construction loan, and Teleflex's expert testified that the LLC's assets always exceeded its debts. There was evidence only of a $5,000 debt to the LLC's attorney. Read in the light most favorable to the verdict, Jacobs's testimony and the e-mail from the vice president of taxation support a finding that Telair could not take distribution from the LLC as a result of the 2009 deduction. Substantial evidence supports the award of economic damages.

### *Punitive Damages*

The award of $1 million is supported by the evidence and is in reasonable proportion to the $250,000 in actual damages suffered as a result of Teleflex's conduct. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 725; *State Farm Mut. Ins.*

*v. Campbell* (2003) 538 U.S. 408, 418; *BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 575.)

Punitive damages are authorized upon proof by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. (Civ. Code, § 3294, subd. (a).) "Malice" requires either intent to injure the plaintiff or despicable conduct in willful and conscious disregard of the plaintiffs' interests. (*College Hospital Inc. v. Superior Court*, *supra*, 8 Cal.4th 704, 725.) We review an award of punitive damages under the substantial evidence test. (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., supra*, 221 Cal.App.4th 867, 877.) The award and amount are committed first to the discretion of the jury, and then to the trial court on a motion for new trial. We give the trial court's determination "great deference because the trial judge, having been present at trial, necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence." (*Westphal v. Wal-Mart Stores, Inc*. (1998) 68 Cal.App.4th 1071, 1078.)

Substantial evidence supports the jury's finding that Teleflex engaged in wrongful conduct constituting malice, oppression, or fraud. The record contains evidence of intent to injure Wendy Road's interests in the LLC. The LLC's attorney testified that Miller threatened not to allow Telair "to sign anything if the money doesn't go to Teleflex," and said, "It's time for us to take some money. [Bollinger has] taken all the money out of this deal so far." There was also evidence that Bollinger (as principal of Wendy Road) authorized Miller and Jacobs to negotiate with the bank "on behalf of [the LLC] partnership" but Miller and Jacobs instead negotiated on behalf of Teleflex and against the LLC's interests, causing ham to LLC member Wendy Road. Bollinger granted authority "without any restrictions" to the bank's representative, not to Miller and Jacobs.

We do not reassess the credibility of witnesses or reweigh this evidence on appeal. We must accept every reasonable inference and resolve all conflicts in favor of the judgment. (*Westphal v. Wal-Mart Stores, Inc.*, *supra*, 68 Cal.App.4th 1071, 1078.) This case is unlike *Stewart v. Truck Ins. Exchange* (1993) 17 Cal.App.4th 468, 483, in

which there was no evidence of intent to injure or despicable conduct carried out in conscious disregard of the plaintiff's rights. The award of $1 million in punitive damages against a "one and a half billion dollars in sales company," is not excessive in view of the degree of reprehensibility of Teleflex's conduct, the four-to-one ratio to compensatory damages, and penalties authorized in comparable cases. (*State Farm Mut. Ins. v. Campbell, supra,* 538 U.S. 408, 418.)

DISPOSITION

The judgment is affirmed. Wendy Road shall recover costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

14.

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

McDermott Will & Emery LLP, Richard K. Welsh, Gregory R. Jones, Kate M. Hammond, for Cross-Defendant and Appellant.

John A. Furutani for Cross-Complainant and Respondent.